Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/19/2018 09:12 AM CDT

In re Guardianship of Luis J., a minor child.
Joaquin Tomas Joaquin Alberto, appellant,
v. State of Nebraska, appellee.

___ N.W.2d ___

Filed July 27, 2018.    No. S-17-1142.

1. **Courts: Jurisdiction: Evidence: Child Custody.** A county court with a jurisdictional basis under Neb. Rev. Stat. § 43-1238(a) (Reissue 2016) and which has made an initial child custody determination, such as appointing a guardian, has the authority to make immigration-related factual findings where the evidence is sufficient and the court has been requested to do so.

2. **Courts: Juvenile Courts: Jurisdiction: Guardians and Conservators: Child Custody.** A county court properly taking jurisdiction over a guardianship and making an initial custody determination is not excluded from Neb. Rev. Stat. § 43-1238(b) (Reissue 2016), even where there is a juvenile court in that county, and the county court may make special findings of fact where appropriate.

3. **Courts: Juvenile Courts: Guardians and Conservators: Child Custody: Federal Acts.** A Nebraska county court which properly appoints a guardian for a juvenile makes a custody determination, and thus, the county court is considered a "juvenile court" for purposes of 8 U.S.C. § 1101 (a)(27)(J)(i) and (ii) (Supp. V 2018).

4. **Courts: Jurisdiction: Guardians and Conservators.** Under Neb. Rev. Stat. § 24-517(2) (Reissue 2016), a Nebraska county court has exclusive original jurisdiction in all matters relating to the guardianship of a person, subject to exceptions.

5. **Guardians and Conservators: Child Custody.** A guardianship is no more than a temporary custody arrangement established for the well-being of a child.

6. **Courts: Child Custody: Evidence.** Neb. Rev. Stat. § 43-1238(b) (Reissue 2016), as amended in 2017, provides that when requested by one of the parties or upon the court's own motion, a court making an

initial custody determination "shall issue" an order containing the three enumerated factual findings if there is sufficient evidence.

Appeal from the County Court for Douglas County: Thomas K. Harmon, Judge. Reversed and remanded for further proceedings.

Roxana Cortes Reyes, of Immigrant Legal Center, an affiliate of Justice For Our Neighbors Network, for appellant.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Johnson, District Judge.

Miller-Lerman, J.

## NATURE OF CASE

Although the county court for Douglas County appointed Joaquin Tomas Joaquin Alberto as guardian of his juvenile grandson, Luis J., it declined to make special factual findings necessary for Luis to apply for special immigrant juvenile (SIJ) status under 8 U.S.C. § 1101(a)(27)(J) (Supp. V 2018). Following a hearing on Alberto's motion to amend this initial ruling, relying on Nebraska statutes, the county court concluded that the county court for Douglas County "does not function as juvenile court" and that the issue of making specific findings to be used in immigration proceedings is committed to "the Separate Juvenile Court of Douglas County." Alberto appealed. During the pendency of this appeal, the Nebraska Legislature amended Neb. Rev. Stat. § 43-1238(b) (Reissue 2016) in 2018 Neb. Laws, L.B. 670, to clarify that courts with jurisdiction over initial child custody determinations under § 43-1238(a) also have "jurisdiction and authority" to make special findings of fact similar to those contemplated by 8 U.S.C. § 1101(a)(27)(J). Amendments to § 43-1238(b) have gone into effect, and because they are procedural rules, they apply to pending cases. In this case, the county court made a custody determination under § 43-1238(a), but it erred when it concluded it was not a "juvenile court" for purposes of 8 U.S.C. § 1101(a)(27)(J)(i) and refused to make

special findings on this basis. Accordingly, we reverse the order of the county court and remand the cause for further proceedings consistent with this opinion based on the existing record.

## FACTS

Luis was born in San Pedro Soloma, Guatemala, in 1999 and arrived in Nebraska in 2016 at age 17 without resources or parental supervision. On July 21, 2017, Alberto filed a petition for the appointment of a permanent guardian for Luis as a minor, under Neb. Rev. Stat. § 30-2605 et seq. (Reissue 2016), in the county court for Douglas County. He also sought findings that "reunification with his parents is not viable due to neglect, abandonment, and child abuse" and that "it would not be in Luis [sic] best interests to be returned to Guatemala." These special findings would potentially allow Luis to apply to the U.S. Citizenship and Immigration Services for SIJ status. 8 U.S.C. § 1101(a)(27)(J). The record includes a sworn statement by Luis detailing the facts of his situation.

The petition and statement indicate that Luis' homelife in Guatemala was troubled and that he fled because "[f]ood, shelter and safety are things [he] did not have in Guatemala." He lived with his mother, father, and four siblings. His father is an alcoholic, and every time he was drunk, he beat up Luis' mother in front of Luis and his siblings. He beat her with open and closed fists and with a belt. Luis would try to defend his mother during these attacks, but he was a child and lacked the bodily strength to do so. When Luis tried to defend his mother, his father would beat him in the same manner, leaving bruises all over Luis' body. The beatings would end with Luis' father kicking him and his mother out of the house. Luis also testified regarding the abuse.

Luis' parents were unable to care for the five children. Luis stated that in Guatemala, he was forced to work in dangerous conditions and not allowed to go to school. Luis had to drop out of school when he was 11 years old to work full time to help his family. He first started working on his family's land

without pay. At the age of 14, he was required to work on other land doing hard labor for payment. The labor included preparing the land for planting, by hand, using a hoe; weeding; and carrying 100-pound sacks of crops. When he could not carry a sack, his father beat him. His parents required him to turn over all the money he made at his field jobs to pay for the family's food.

Luis left Guatemala, where the money he made working was not enough to feed his family. Luis was expected to send money back to the family. Luis left without necessary financial or food resources to survive. Luis stopped and worked in Mexico multiple times to afford the next bus ticket to continue his journey.

Since arriving in the United States alone on or about September 26, 2016, Luis has not seen his parents, nor have they provided him any food, shelter, security, or education. Instead, his grandfather, Alberto, provides for Luis' needs and sends him to school. Luis stated that he now lives in an environment free of violence. He stated that he needs Alberto's help to continue with schooling, find a job, and build a life in the United States.

As noted, in addition to seeking to be appointed as Luis' guardian, Alberto requested that the county court make special findings of fact contemplated in 8 U.S.C. § 1101(a)(27)(J). Alberto sought special findings of fact from the state court to potentially become eligible for SIJ status. SIJ status allows a juvenile immigrant to remain in the United States and apply for lawful permanent resident status. Obtaining the special findings is the first step in the process to achieve SIJ status. To achieve SIJ status under 8 U.S.C. § 1101(a)(27)(J), a state court must have made a predicate finding that (1) the minor is dependent on a juvenile court or has been "placed under the custody of . . . an individual . . . appointed by a State or juvenile court"; (2) "reunification with . . . the . . . parents is not viable due to abuse, neglect, [or] abandonment"; and (3) it would not be in the minor's best interests to be returned to his or her country

of origin. Under 8 C.F.R. § 204.11(a) (2018), "[j]uvenile court means a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." (Emphasis omitted.)

In its September 27, 2017, order, the county court found it was in the best interests of Luis to have Alberto appointed as his legal guardian. However, because it concluded that the Douglas County Court's probate division does not function as a "juvenile court," it declined to make the requested special findings of fact that Luis could use in his immigration petition. In reaching its conclusion as to what constituted a "juvenile court" for SIJ findings purposes, the county court relied on Nebraska statutes, rather than the federal definition. Under the county court's reasoning, the request for findings would require that the Douglas County Court find that (1) Luis was "dependent" on the Nebraska juvenile court system, (2) he was eligible for long-term foster care or kinship placement, and (3) it is not in Luis' best interests to be returned to Guatemala to his parents. The court determined that such findings are "exclusive functions of and are determinations to be made solely by the Separate Juvenile Court of Douglas County Nebraska[,] or to those County Courts throughout greater Nebraska who exercise exclusive jurisdiction over juveniles." The order concluded that immigration status should be determined by the U.S. government, not by the county court.

Alberto moved to alter or amend the county court's September 27, 2017, order and again requested factual findings regarding Luis' best interests for SIJ purposes. After briefing and another hearing, the county court denied the motion to alter or amend on October 17. In its order, the county court noted that pursuant to the population guidelines of Neb. Rev. Stat. § 43-2,111 (Reissue 2016), there are presently three counties with a separate juvenile court: Douglas, Lancaster, and Sarpy Counties. The county court acknowledged that under Neb. Rev. Stat. § 24-517(2) (Reissue 2016), the county court can have concurrent original jurisdiction over a child in need of

a guardian, but determined that making additional findings of fact would exceed its jurisdictional directives under state law. The county court stated that it "cannot and does not function as a juvenile court and the applicable statutes and regulations commit these specific issues to the Separate Juvenile Court of Douglas County, Nebraska."

Alberto appeals.

## ASSIGNMENTS OF ERROR

Alberto generally claims that the county court erred when it concluded that it is not a "juvenile court" for purposes of the federal SIJ process. Alberto specifically claims that although it found a need to appoint a permanent guardian, the county court erred (1) when it concluded that although the Douglas County Court has the power to appoint a guardian for a minor, it lacks the authority to make the special findings of fact for SIJ purposes, and (2) when it refused to make the requested findings of fact that (a) reunification with one or both parents is not viable due to abuse, neglect, or abandonment and (b) it would not be in Luis' best interests to return to Guatemala.

## STANDARD OF REVIEW

Statutory interpretation presents a question of law. *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018). We independently review questions of law decided by a lower court. *Id*.

## ANALYSIS

[1,2] We recently considered the central issue in this case in *In re Guardianship of Carlos D., ante* p. 646, ___ N.W.2d ___ (2018), in which we held that a county court with a jurisdictional basis under § 43-1238(a) and which has made an initial child custody determination, such as appointing a guardian, has the authority to make immigration-related factual findings where the evidence is sufficient and the court has been requested to do so. In this case, the county court concluded

that in Douglas County, only the separate juvenile court of Douglas County would have authority to make SIJ findings, and thus, it refused to make the special findings. During the pendency of this appeal, the Nebraska Legislature enacted 2018 Neb. Laws, L.B. 670, which became effective on July 19, 2018, and made clear, inter alia, that a county court making a guardianship determination also has authority to make the special findings for the ward to establish SIJ status. See § 43-1238(b). As explained below, a county court properly taking jurisdiction over a guardianship and making an initial custody determination is not excluded from § 43-1238(b), even where there is a juvenile court in that county, and the county court may make special findings of fact where appropriate.

"Juvenile Court" Under 8 U.S.C. § 1101(a)(27)(J)(i)
Encompasses Courts With Jurisdiction to Make
Determinations About the Custody and Care of
Juveniles and Is Not Limited in Nebraska to
the Separate Juvenile Courts: The County
Court Was a "Juvenile Court" Under
8 U.S.C. § 1101(a)(27)(J)

The county court placed Luis in the custody of Alberto, a situation encompassed by 8 U.S.C. § 1101(a)(27)(J)(i). Federal provisions allow a juvenile immigrant to apply for SIJ status and seek lawful permanent residence if several prerequisites are met. 8 U.S.C. § 1101(a)(27)(J) provides, in pertinent part, that a "special immigrant" is

an immigrant who is present in the United States—

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, *or placed under the custody of*, an agency or department of a State, or *an individual* or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of [SIJ] status[.]

(Emphasis supplied.)

Here, the county court concluded that it was not a "juvenile court" under Nebraska statutory provisions and that therefore, it could not make the findings required of a "juvenile court" in 8 U.S.C. § 1101(a)(27)(J)(i) and (ii). The county court erred as a matter of law when it concluded it was not a "juvenile court" as that term is defined for purposes of 8 U.S.C. § 1101(a)(27)(J).

[3] In order to achieve SIJ status, the individual whose custody has been determined prior to age 21, 8 C.F.R. § 204.11, must have obtained the judicial determinations listed above in 8 U.S.C. § 1101(a)(27)(J)(i) and (ii) from a "juvenile court," as that term is used in the federal provisions. *In re Guardianship of Carlos D., ante* p. 646, ___ N.W.2d ___ (2018). The Code of Federal Regulations defines "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). As we explain below, a Nebraska county court which properly appoints a guardian for a juvenile makes a custody determination, and thus, the county court was considered a "juvenile court" for purposes of 8 U.S.C. § 1101(a)(27)(J)(i) and (ii). Courts have generally held that a guardianship over a juvenile renders the juvenile subject to 8 U.S.C. § 1101(a)(27)(J)(i). E.g., *Jisun L. v. Young Sun P.*, 75 A.D.3d 510, 905 N.Y.S.2d 633 (2010). Having made a "custody" determination, the county court was considered a "juvenile court" for purposes of 8 U.S.C. § 1101(a)(27)(J)(i) and (ii), and the county court's conclusion to the contrary was error.

### The County Court Made a Custody Determination When it Appointed a Guardian for Luis

[4,5] A Nebraska county court has exclusive original jurisdiction in all matters relating to the guardianship of a person with exceptions not applicable here. § 24-517(2). Under Nebraska statutes and jurisprudence, a guardianship of a child is a child custody determination. *In re Guardianship of D.J.*, 268 Neb. 239, 248, 682 N.W.2d 238, 246 (2004) (stating "[a] guardianship is no more than a temporary custody arrangement established for the well-being of a child"). See Neb. Rev. Stat. § 43-1227(4) (Reissue 2016) (concerning "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue," including a proceeding for guardianship in which the issue may appear). Elsewhere, the statutes provide that a "[c]hild custody determination means a judgment, decree, or other order of a court providing for the legal custody, physical custody, or visitation with respect to a child." § 43-1227(3).

In *In re Guardianship of Carlos D., supra*, we held that under a recent amendment to § 43-1238(b), courts with jurisdiction over "initial child custody determination[s]" as used in § 43-1238(a) also have jurisdiction and authority to make special findings of fact similar to those contemplated by 8 U.S.C. § 1101(a)(27)(J). Alberto sought a guardianship of the minor Luis in the county court, and the county court's order declaring Alberto as guardian was an initial custody determination.

Section 43-1238(a) generally deals with child custody determinations which are appropriately raised in a court in Nebraska, and § 43-1238(b), as amended, lists the factual findings which can be made by a Nebraska state court with such initial child custody determination authority and the circumstances under which such courts must make such findings. Section 43-1238(b) now provides:

> (b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination

by a court of this state. In addition to having jurisdiction to make judicial determinations about the custody and care of the child, a court of this state with exclusive jurisdiction under subsection (a) of this section has jurisdiction and authority to make factual findings regarding (1) the abuse, abandonment, or neglect of the child, (2) the nonviability of reunification with at least one of the child's parents due to such abuse, abandonment, neglect, or a similar basis under state law, and (3) whether it would be in the best interests of such child to be removed from the United States to a foreign country, including the child's country of origin or last habitual residence. If there is sufficient evidence to support such factual findings, the court shall issue an order containing such findings when requested by one of the parties or upon the court's own motion.

(Emphasis omitted.)

[6] As we noted in *In re Guardianship of Carlos D., ante* p. 646, ___ N.W.2d ___ (2018), the amendment to § 43-1238(b) became operative on July 19, 2018, 3 calendar months after the adjournment of the legislative session on April 18. We held that § 43-1238(b) is a state court procedural amendment which applies to pending cases. *In re Guardianship of Carlos D., supra.* We also noted that § 43-1238(b), as amended, provides that when requested by one of the parties or upon the court's own motion, a court making an initial custody determination "shall issue" an order containing the three enumerated factual findings if there is sufficient evidence. *In re Guardianship of Carlos D., supra.*

As explained above, the county court in this case made an initial child custody determination when it granted Alberto a guardianship over the minor Luis and was therefore a "juvenile court" for federal purposes of making special findings. As noted, a court with jurisdiction to make a custody determination under § 43-1238(a) has the authority to make the findings outlined in § 43-1238(b) as amended. In sum, in a guardianship

case, the county court is a court making a custody determination in satisfaction of 8 U.S.C. § 1101(a)(27)(J)(i) and (ii), and in this case, the county court erred when it concluded it was not a "juvenile court" under 8 U.S.C. § 1101(a)(27)(J)(i) and (ii) based on its erroneous reliance on Nebraska statutes rather than by reference to the federal provisions describing "juvenile court." We reverse the court's order of October 17, 2017, which denied Alberto's motion to alter or amend. The county court has the authority to make findings outlined in § 43-1238(b). Although we reverse the county court's order of October 17, we express no opinion of the impact upon remand of Neb. Rev. Stat. § 30-2614 (Reissue 2016), providing for the termination of a guardian's authority upon the minor's attainment of majority.

## CONCLUSION

In this guardianship case, the suitability of appointing Alberto as guardian for Luis is not at issue in this appeal. The county court erred as a matter of law when it concluded it was not a "juvenile court" for purposes of making findings consistent with 8 U.S.C. § 1101(a)(27)(J)(i) and (ii). A county court with a jurisdictional basis under § 43-1238(a) and which has made an initial child custody determination, such as appointing a guardian, has authority under § 43-1238(b) to make factual findings regarding the enumerated items where the evidence is sufficient, and the court has been requested to do so. The enumerated items are similar to the immigration-related findings in 8 U.S.C. § 1101(a)(27)(J). Thus, we reverse the order of October 17, 2017, and remand the cause for further proceedings consistent with this opinion based on the existing record.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.