Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
10/19/2018 09:12 AM CDT

In re Guardianship of Carlos D., a minor child.
Eleany Esmerelda Zunun Gonzalez, appellant,
v. State of Nebraska, appellee.

___ N.W.2d ___

Filed July 27, 2018.    No. S-17-1056.

1. **Statutes.** Statutory interpretation presents a question of law.
2. **Courts: Jurisdiction: Guardians and Conservators.** A Nebraska county court has exclusive original jurisdiction in all matters relating to the guardianship of a person, subject to exceptions.
3. **Guardians and Conservators: Child Custody.** Under Nebraska statutes and jurisprudence, a guardianship of a child is a child custody determination.
4. **Courts: Jurisdiction: Child Custody: Federal Acts.** The 2017 amendment to Neb. Rev. Stat. § 43-1238(b) (Reissue 2016) clarifies that courts with jurisdiction over an "initial child custody determination" as that term is used in § 43-1238(a) also have jurisdiction and authority to make special findings of fact similar to those contemplated by 8 U.S.C. § 1101(a)(27)(J) (Supp. V 2018).
5. **Legislature: Statutes: Time.** Generally, legislation that is passed takes effect 3 calendar months after the Legislature adjourns unless the Legislature evidences otherwise.
6. **Statutes: Time.** Procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not.
7. **Statutes: Words and Phrases.** A substantive right is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. A procedural amendment simply changes the method by which an already existing right is exercised.
8. **Statutes: Child Custody: Time.** A statutory amendment to Neb. Rev. Stat. § 43-1238(b) (Reissue 2016) which merely clarifies the authority and procedure for making the factual findings in a case involving child custody is a procedural amendment and applies to pending cases.

Appeal from the County Court for Lancaster County: Holly J. Parsley, Judge. Reversed and remanded for further proceedings.

David V. Chipman, of Monzón, Guerra & Associates, for appellant.

Kevin Ruser and Morgan Nelson, Senior Certified Law Student, of Immigration Clinical Law Program, University of Nebraska College of Law, and Robert McEwen, Sarah Helvey, and Allison Derr, Senior Certified Law Student, of Nebraska Appleseed Center for Law in the Public Interest, for amici curiae University of Nebraska Immigration Clinic and Nebraska Appleseed Center for Law in the Public Interest.

Charles Shane Ellison, of Creighton Immigrant and Refugee Clinic, Creighton University School of Law, for amici curiae National Justice For Our Neighbors and Immigrant Legal Center, an affiliate of Justice For Our Neighbors Network.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Vaughan, District Judge.

Miller-Lerman, J.

## NATURE OF CASE

Although the county court for Lancaster County appointed Eleany Esmerelda Zunun Gonzalez as guardian of her juvenile nephew, Carlos D., it declined to make special factual findings that are necessary to apply for special immigrant juvenile (SIJ) status under 8 U.S.C. § 1101(a)(27)(J) (Supp. V 2018). Following a hearing on Gonzalez' motion to amend this initial ruling, the county court stated in an order that Carlos was "not dependent on this court" and that Gonzalez had not satisfied 8 U.S.C. § 1101(a)(27)(J) and therefore denied Gonzalez' motion to make specific findings to be used in immigration proceedings. Gonzalez appealed. During the pendency of this appeal, the Nebraska Legislature amended Neb. Rev. Stat. § 43-1238(b)

(Reissue 2016) in 2018 Neb. Laws, L.B. 670, to clarify that courts with jurisdiction over initial child custody determinations under § 43-1238(a) also have "jurisdiction and authority" to make special findings of fact similar to those contemplated by 8 U.S.C. § 1101(a)(27)(J). Amendments to § 43-1238(b) have gone into effect, and because they are procedural rules, they apply to pending cases. In this case, the county court made a custody determination under § 43-1238(a), but it erred when it concluded Gonzalez had not satisfied the dependency or custody component of 8 U.S.C. § 1101(a)(27)(J) and refused to make special findings on this basis. Accordingly, we reverse the order of the county court and remand the cause for further proceedings consistent with this opinion based on the existing record.

## FACTS

Carlos was born in Guatemala in November 1998 and arrived in Nebraska in 2015 at age 16 without any support or parental supervision. On January 23, 2017, Gonzalez filed a petition for the appointment of a permanent guardian for Carlos, her minor nephew, in the county court for Lancaster County. The following facts are taken from the petition and Carlos' declaration, which the county court found to be credible:

Carlos traveled to the United States by foot and public transportation and arrived on or about April 27, 2015. Before reaching Nebraska, Carlos was detained at the border by U.S. Customs and Border Protection, but he was released to his aunt, Gonzalez, who, according to U.S. Department of Health and Human Services Office of Refugee Resettlement information, lived in Lincoln, Nebraska.

Carlos' declaration stated that he was born in Tacana de San Marcos, Guatemala, and that he grew up with his mother, stepfather, and three sisters. Carlos never knew his father and denied having any contact with him. Carlos' stepfather drank almost every day and was verbally and physically abusive toward Carlos, his sisters, and his mother. The stepfather would

punch Carlos' mother in the mouth with a fist and pull her hair. Two or three times a week, the stepfather hit Carlos and his sisters with a belt or whatever item he would find in his path. Verbal abuse happened daily. After 13 years, the stepfather decided to leave and abandoned the family.

After Carlos' mother became separated from the stepfather, she began to reject Carlos. She would make comments to him such as, "'You're a mistake/error in my life'" and "'I don't want to see you and don't care if you run away.'" Carlos' mother would not feed him because she would be mad at him. He became the "'man'" of the home at age 8 and had to work at a farm during the evenings after school to earn food for the family. When Carlos was 10 years old, his mother would not allow him to go to school, so that he could be employed full time in order to sustain his mother and sisters. The work that he was required to do was that of an adult man carrying "heavy sacks."

When Carlos was 13 years old, he began to be approached by some members of the "'MS 13'" gang. They would wait for him after work to try to recruit him. At first, they were friendly, but once he declined to join the gang, things changed. The gang verbally harassed Carlos and then, after the third encounter with the gang members, four or five gang members who were heavily armed "beat up" Carlos because he declined to join the gang. The assault included hitting Carlos with "big wooden sticks" on the stomach and face and kicking him while he was on the ground. One gang member used a knife and cut Carlos on his right arm and each of his index fingers. The members threatened Carlos that he would be killed if he did not join.

Carlos stated that he was in fear for his life after the gang had beaten him. He was anxious and always checking his surroundings. He would try to find a different route to work and to avoid the gang members. However, he would inevitably run into them, and each time, he would be verbally abused, beat up, "threatened with [his] life," and robbed. He was robbed

approximately 10 times, and each time, he had either a gun to his head or a knife behind his back, or both.

Carlos fled Guatemala and was eventually united with his aunt, Gonzalez. Carlos stated that his aunt provides him with "all of [his] care and need, including food and a place to live."

The petition for guardianship alleged that Carlos' father abandoned him prior to birth and his mother had neglected him in Guatemala. In addition to seeking a permanent guardianship, the petition requested certain special findings that "unification with [Carlos'] parents is not viable due to abuse and neglect" and that "it would not be in [Carlos'] best interests to be returned to Guatemala." There is no dispute that the county court had jurisdiction to hear the petition for guardianship.

The matter came before the county court for hearing on June 13, 2017. The county court received the declaration by Carlos with details of his life and conditions in Guatemala. At the hearing, the county court filed Gonzalez' proof of service to Carlos' mother in her village in Guatemala and by publication.

At the hearing, the county court stated it was not inclined to make special findings regarding Carlos' best interests "based on a number of different things." Gonzalez submitted a proposed order which included special findings consistent with 8 U.S.C. § 1101(a)(27)(J). The county court denied Gonzalez' request for special findings. The county court entered a written order appointing Gonzalez as Carlos' guardian.

Gonzalez, on Carlos' behalf, filed a motion to alter or amend the judgment, requesting that the county court make the special findings of fact contemplated in 8 U.S.C. § 1101(a)(27)(J). Gonzalez sought special findings of fact from the state court to potentially become eligible for SIJ status. SIJ status allows a juvenile immigrant to remain in the United States and apply for lawful permanent resident status. Obtaining the special findings is the first step in the process to achieve SIJ status.

To achieve SIJ status under 8 U.S.C. § 1101(a)(27)(J), a state court must have made a predicate finding that (1) the minor is dependent on a juvenile court or has been "placed under the custody of . . . an individual . . . appointed by a State or juvenile court"; (2) "reunification with . . . the . . . parents is not viable due to abuse, neglect, [or] abandonment"; and (3) it would not be in the minor's best interests to be returned to his or her country of origin.

At the hearing on the motion to alter or amend the judgment, the county court found Carlos' declaration to be credible. However, on September 2, 2017, the county court denied the request for specific findings, stating in its order that Carlos is "not dependent on this court."

Gonzalez appeals.

## ASSIGNMENTS OF ERROR

Gonzalez generally claims that the county court erred when it concluded that because Carlos was not dependent on the county court, it could not make the requested special findings. Gonzalez specifically claims that although it found a need to appoint a permanent guardian, the county court erred (1) when it failed to determine that Carlos was "declared dependent" on the county court or "legally committed to, or placed under the custody of, . . . an individual or entity appointed by a . . . juvenile court" as these terms are defined by 8 U.S.C. § 1101(a)(27)(J) and (2) when it refused to make the requested findings of fact that (a) reunification with one or both parents is not viable due to abuse, neglect, or abandonment and (b) it would not be in Carlos' best interests to return to Guatemala.

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law. *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018). We independently review questions of law decided by a lower court. *Id*.

ANALYSIS

As we read the challenged order, the county court believed that it did not have authority to make the special findings of fact requested by Gonzalez. However, during the pendency of this appeal, the Nebraska Legislature enacted 2018 Neb. Laws, L.B. 670, which became effective on July 19, 2018, and made clear, inter alia, that a county court making a guardianship determination also has authority to make the special findings necessary for the ward to establish a SIJ status. Below, we set forth the statutory provisions applicable to the analysis of this appeal.

Federal Definition of SIJ

Federal provisions allow a juvenile immigrant to apply for SIJ status and seek lawful permanent residence if several prerequisites are met. 8 U.S.C. § 1101(a)(27)(J) provides, in pertinent part, that a "special immigrant" is

an immigrant who is present in the United States—

(i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, *or placed under the custody of*, an agency or department of a State, or *an individual* or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

(ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

(iii) in whose case the Secretary of Homeland Security consents to the grant of [SIJ] status[.]

(Emphasis supplied.)

In this case, Carlos was placed in the custody of Gonzalez in fulfillment of 8 U.S.C. § 1101(a)(27)(J)(i). In order to achieve SIJ status, the individual whose custody has been determined prior to age 21, 8 C.F.R. § 204.11 (2018), must also obtain the judicial determinations listed above in 8 U.S.C. § 1101(a)(27)(J)(i) and (ii) from a "juvenile court," as that term is used in the federal provisions. The Code of Federal Regulations defines "juvenile court" as "a court located in the United States having jurisdiction under State law to make judicial determinations about the custody and care of juveniles." 8 C.F.R. § 204.11(a). As we explain below, a guardianship of a child is a child custody determination, and thus, the county court was considered a "juvenile court" for purposes of 8 U.S.C. § 1101(a)(27)(J)(i) and (ii). Courts have generally held that a guardianship over a juvenile renders the juvenile subject to 8 U.S.C. § 1101(a)(27)(J)(i). E.g., *Jisun L. v. Young Sun P.*, 75 A.D.3d 510, 905 N.Y.S.2d 633 (2010).

## State Law: L.B. 670 and Child Custody Proceedings

[2,3] A Nebraska county court has exclusive original jurisdiction in all matters relating to the guardianship of a person, subject to exceptions not applicable here. Neb. Rev. Stat. § 24-517(2) (Reissue 2016). Under Nebraska statutes and jurisprudence, a guardianship of a child is a child custody determination. *In re Guardianship of D.J.*, 268 Neb. 239, 248, 682 N.W.2d 238, 246 (2004) (stating "[a] guardianship is no more than a temporary custody arrangement established for the well-being of a child"). See Neb. Rev. Stat. § 43-1227(4) (Reissue 2016) (concerning "a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue," including a proceeding for guardianship in which the issue may appear). Elsewhere, the statutes provide that a "[c]hild custody determination means a judgment, decree, or other order of a court providing for the

legal custody, physical custody, or visitation with respect to a child." § 43-1227(3).

[4] As noted above, the recently enacted L.B. 670 amended § 43-1238(b) and clarifies that courts with jurisdiction over an "initial child custody determination" as that term is used in § 43-1238(a) also have jurisdiction and authority to make special findings of fact similar to those contemplated by 8 U.S.C. § 1101(a)(27)(J). Gonzalez sought a guardianship of the minor Carlos in the county court, see Neb. Rev. Stat. § 30-2605 et seq. (Reissue 2016), and the county court's order declaring Gonzalez as guardian was an initial custody determination.

Section 43-1238(a) generally deals with child custody determinations which are appropriately raised in a court in Nebraska, and § 43-1238(b), as amended, lists the factual findings which can be made by a Nebraska state court with such initial child custody determination authority and the circumstances under which such courts must make such findings.

L.B. 670 amended § 43-1238, which now provides, with the amended portion emphasized:

(a) Except as otherwise provided in section 43-1241, a court of this state has jurisdiction to make an initial child custody determination only if:

(1) this state is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this state but a parent or person acting as a parent continues to live in this state;

(2) a court of another state does not have jurisdiction under subdivision (a)(1) of this section, or a court of the home state of the child has declined to exercise jurisdiction on the ground that this state is the more appropriate forum under section 43-1244 or 43-1245, and:

(A) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have

a significant connection with this state other than mere physical presence; and

(B) substantial evidence is available in this state concerning the child's care, protection, training, and personal relationships;

(3) all courts having jurisdiction under subdivision (a)(1) or (a)(2) of this section have declined to exercise jurisdiction on the ground that a court of this state is the more appropriate forum to determine the custody of the child under section 43-1244 or 43-1245; or

(4) no court of any other state would have jurisdiction under the criteria specified in subdivision (a)(1), (a)(2), or (a)(3) of this section.

(b) Subsection (a) of this section is the exclusive jurisdictional basis for making a child custody determination by a court of this state. *In addition to having jurisdiction to make judicial determinations about the custody and care of the child, a court of this state with exclusive jurisdiction under subsection (a) of this section has jurisdiction and authority to make factual findings regarding (1) the abuse, abandonment, or neglect of the child, (2) the nonviability of reunification with at least one of the child's parents due to such abuse, abandonment, neglect, or a similar basis under state law, and (3) whether it would be in the best interests of such child to be removed from the United States to a foreign country, including the child's country of origin or last habitual residence. If there is sufficient evidence to support such factual findings, the court shall issue an order containing such findings when requested by one of the parties or upon the court's own motion.*

(Emphasis omitted.) (Emphasis supplied.)

[5-7] Generally, legislation that is passed takes effect 3 calendar months after the Legislature adjourns, see Neb. Const. art. III, § 27, unless the Legislature evidences otherwise. *Smith v. Mark Chrisman Trucking*, 285 Neb. 826, 829 N.W.2d

717 (2013). Thus, L.B. 670 became operative on July 19, 2018, 3 calendar months after the adjournment of the legislative session on April 18. In considering whether to apply § 43-1238(b), as amended, to this case, we note that procedural amendments to statutes are ordinarily applicable to pending cases, while substantive amendments are not. *Smith v. Mark Chrisman Trucking, supra*. This is because a substantive right is one which creates a right or remedy that did not previously exist and which, but for the creation of the substantive right, would not entitle one to recover. *Id*. A procedural amendment, on the other hand, simply changes the method by which an already existing right is exercised. *Id*. Put another way, a substantive law commonly creates duties, rights, and obligations of a party, whereas a procedural law prescribes the means and methods through and by which substantive laws are enforced and applied. See *In re Interest of Clifford M. et al.*, 261 Neb. 862, 626 N.W.2d 549 (2001).

[8] Section 43-1238(b), as amended, instructs a court with the jurisdictional basis of a child custody determination under § 43-1238(a) that it has the authority to also make factual findings, where requested and where there is sufficient evidence to support the findings. Because this amendment merely clarifies the authority and procedure for making the factual findings in a case involving child custody, we conclude that the addition to § 43-1238(b) in L.B. 670 is a state court procedural amendment and applies to pending cases. A statute requiring a court to make explicit findings of fact on the record is procedural. See, e.g., *Zahl v. Zahl*, 273 Neb. 1043, 736 N.W.2d 365 (2007) (characterizing explicit findings regarding custody as procedural); *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987) (characterizing specific findings of fact supporting parental rehabilitative plan as procedural). Any substantive effect of these findings is a result of federal law in that these findings are a requisite to SIJ status. But the fact that these findings may have some substantive effect as a matter of federal law does not

transform the state law before us into substantive legislation. For completeness, we note that making findings for SIJ status purposes has long been accepted by the Nebraska courts, and § 43-1238(b), as amended, codifies this practice. See, e.g., *In re Interest of Erick M.*, 284 Neb. 340, 820 N.W.2d 639 (2012); *In re Interest of Luis G.*, 17 Neb. App. 377, 764 N.W.2d 648 (2009).

Statutory interpretation presents a question of law. *In re Trust of Shire*, 299 Neb. 25, 907 N.W.2d 263 (2018). Section 43-1238(b) as amended provides that when requested by one of the parties or upon the court's own motion, such a court "shall issue" an order containing the enumerated findings where there is sufficient evidence. Given the language of the amendments, we conclude that under § 43-1238(b), a court with jurisdiction to make an initial child custody determination under § 43-1238(a) can make factual findings regarding the three factors enumerated in § 43-1238(b).

As explained above, the county court in this case made an initial child custody determination when it granted Gonzalez a guardianship over the minor Carlos. Carlos had been placed in the custody of an individual—Gonzalez—in satisfaction of 8 U.S.C. § 1101(a)(27)(J)(i), and the county court's determination to the contrary was error. The county court has the authority to make findings outlined in § 43-1238(b). Although we reverse the county court's order of September 2, 2017, we express no opinion of the impact upon remand of Neb. Rev. Stat. § 30-2614 (Reissue 2016), providing for the termination of a guardian's authority upon the minor's attainment of majority.

CONCLUSION

In this guardianship case, the suitability of appointing Gonzalez as guardian for Carlos is not at issue in this appeal. The evidence submitted by Carlos has been deemed credible. The county court erred when it concluded it had not made a custody determination for purposes of 8 U.S.C.

§ 1101(a)(27)(J)(i). Section 43-1238(b), as amended, applies to pending cases. A county court with a jurisdictional basis under § 43-1238(a) and which has made an initial child custody determination, such as appointing a guardian, has authority under § 43-1238(b) to make factual findings regarding the enumerated items where the evidence is sufficient and the court has been requested to do so. The enumerated items are similar to the immigration-related findings in 8 U.S.C. § 1101(a)(27)(J). Thus, we reverse the order of September 2, 2017, and remand the cause for further proceedings consistent with this opinion based on the existing record.

Reversed and remanded for
further proceedings.