Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/29/2020 09:08 AM CDT

ARIANA BERNAL SABINO, APPELLANT, V.
JUAN CARLOS GENCHI OZUNA, APPELLEE.
___ N.W.2d ___

Filed March 6, 2020.    No. S-18-110.

1. **Statutes.** Statutory interpretation presents a question of law.
2. **Judgments: Appeal and Error.** An appellate court independently reviews questions of law decided by a lower court.
3. **Divorce: Appeal and Error.** In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.
4. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions with respect to the matters at issue.
5. **Judges: Words and Phrases.** A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.
6. **Statutes: Time.** Amendments to Neb. Rev. Stat. § 43-1238(b) (Cum. Supp. 2018) were procedural and applicable to pending cases.
7. **Courts: Minors.** The role of state courts in the special immigrant juvenile status determination is to make the findings of fact necessary to the U.S. Citizenship and Immigration Service's legal determination of the immigrant child's entitlement to special immigrant juvenile status.
8. **Courts: Federal Acts: Minors.** Federal law affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, and abandonment, as well as a child's best interests. But it is not the role of the state court to make a determination as to whether a child will ultimately be eligible for special immigrant juvenile status; that is a determination reserved for the U.S. Citizenship and Immigration Service and the federal government.

9. **Courts: Minors.** That a court is requested to make special immigrant juvenile status findings does not mean that it must make findings favorable to the party seeking them.
10. **Courts: Minors: Evidence.** Courts asked to make special immigrant juvenile status findings may conclude that there was insufficient evidence or that the evidence was not credible.

Appeal from the District Court for Douglas County: PETER C. BATAILLON, Judge. Reversed and remanded for further proceedings.

Roxana Cortes Reyes, of Immigrant Legal Center, an affiliate of the Justice For Our Neighbors Network, for appellant.

No appearance for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

HEAVICAN, C.J.

## INTRODUCTION

The Douglas County District Court dissolved the marriage of Ariana Bernal Sabino and Juan Carlo Genchi Ozuna and awarded full custody of the parties' child to Sabino. Sabino sought specific findings of fact for purposes of special immigrant juvenile (SIJ) status under federal law. The district court declined to make such findings, and Sabino appealed. We reverse, and remand for further proceedings.

## FACTUAL BACKGROUND

According to an affidavit offered into evidence by Sabino at trial, she and Ozuna met in Cuatro Bancos, Guerrero, Mexico, in approximately 2000. Sabino was born in Cuatro Bancos, and she was 13 years old when she met Ozuna. A year later, she and Ozuna moved in together, and 5 months after that, Ozuna began to physically assault Sabino. Sabino became pregnant in May 2003, and she and Ozuna were married in November. Throughout this time, Ozuna continued to physically assault Sabino. In December, Sabino left Ozuna and returned to her

parents' home. According to Sabino's affidavit, just 1 week later, Ozuna moved in with another woman.

Sabino averred that Ozuna was aware of her pregnancy and of the due date of the baby. Sabino also averred that Ozuna was aware of where she was staying. Sabino stated that Ozuna never attempted to see her or the baby and provided no financial assistance.

According to her affidavit, Sabino was unable to provide for the couple's son on her own and came to the United States when her son was 20 months old. Sabino left her son in Mexico with her mother and sent money to cover his expenses. She also spoke with him on the telephone frequently. In August 2016, Sabino's son and mother, who was also a victim of domestic violence at the hands of Sabino's father, left Mexico for the United States.

In June 2017, Sabino filed a complaint in the Douglas County District Court for the dissolution of marriage. Ozuna entered a voluntary appearance in October, but did not personally appear. Trial was held on November 8. Sabino testified through a Spanish language interpreter that she was married to Ozuna and was seeking a divorce because Ozuna had hit her, that she had been separated from him for over 13 years, and that she did not believe the marriage could be saved. Sabino sought an award of all of the property in her possession and custody of the parties' son.

Because Sabino had borne children from other relationships while Sabino and Ozuna were married, the trial court continued the trial in order for Sabino to gather evidence rebutting the statutory presumption that Ozuna was the father of those children. The trial resumed on January 11, 2018, at which time evidence rebutting that presumption was offered.

In addition to the proof of paternity for her other children, Sabino offered exhibit 4, which was a photocopy of materials from the U.S. Citizenship and Immigration Services explaining "Special Immigrant Juvenile Status." According to this exhibit, SIJ status is available to children who present in the United

States without legal immigration status because they have been "abused, abandoned, or neglected by a parent." As relevant to this appeal, exhibit 4 notes: "Juvenile courts issue orders that help determine a child's eligibility for SIJ status. . . . The role of the court is to make factual findings based on state law about the abuse, neglect, or abandonment; family reunification; and best interests of the children."

Following admission of this evidence, the court made certain inquiries of Sabino while she was on the witness stand. Specifically, the court asked Sabino whether she or her mother had "any legal authority to live in the United States." Sabino's counsel objected on relevancy grounds, noting that it went to neither "the best interest of the child [n]or the divorce proceedings."

The court then made an oral pronouncement (with an accompanying written decree) granting the divorce and awarding custody to Sabino, subject to Ozuna's reasonable visitation at Sabino's reasonable discretion. Ozuna was also ordered to pay $50 per month in child support.

As relevant to this appeal, the court also stated:

> The Court makes no decision as to the other issues that [Sabino] has requested with regard to abandonment in Mexico, abuse in Mexico, and things of that nature, as the Court does not have adequate information as to why the child could not live safely in some part of Mexico.
>
> In addition, the Court does find that it's relevant as to whether [Sabino] is legally in the United States, if her mother is legally in the United States, things of that nature. And if she refuses to answer those, then I'm not going to go any further with asking other questions in this matter.
>
> The Court's also concerned as to whether it's even within my purview to makes [sic] these determinations. If I do make these — if this is in my purview to make these determinations, then I need a lot more evidence to make that determination. For sure I need evidence as to how

paragraph 7 [of Sabino's affidavit, detailing her mother's flight to the United States due to domestic violence,] was arrived at. . . . Sabino . . . doesn't know how the information in paragraph 7 was obtained. If she doesn't know, then that is somewhat of a crux of the information in this matter.

The district court signed a decree prepared by Sabino's counsel that included the findings sought regarding abuse, neglect, or abandonment; family reunification; and best interests of the child. However, the court struck through those findings and therefore did not make the findings requested by Sabino.

Sabino appealed. In a prior opinion, we concluded that the district court erred in not allowing Sabino to proceed in forma pauperis.[1] We are now presented with the merits of Sabino's appeal.

## ASSIGNMENT OF ERROR

Sabino assigns three assignments of error that can be consolidated as one: The district court erred in not making the findings of fact requested by Sabino.

## STANDARD OF REVIEW

[1,2] Statutory interpretation presents a question of law.[2] We independently review questions of law decided by a lower court.[3]

[3-5] In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge.[4] In a review de novo on the record, an appellate court is required to make independent factual determinations based upon the record, and the court reaches its own independent conclusions

---

[1] See *Sabino v. Ozuna*, 303 Neb. 318, 928 N.W.2d 778 (2019).

[2] *In Re Guardianship of Carlos D.*, 300 Neb. 646, 915 N.W.2d 581 (2018).

[3] *Id.*

[4] *Burgardt v. Burgardt*, 304 Neb. 356, 934 N.W.2d 488 (2019).

with respect to the matters at issue.[5] A judicial abuse of discretion exists if the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying just results in matters submitted for disposition.[6]

## ANALYSIS

This appeal generally presents the question of whether the district court had the authority to make the findings of fact requested by Sabino and, if so, whether there was sufficient evidence for the court to make those findings. Each issue will be addressed in turn.

*District Court's Authority.*

[6] The district court in this case had the authority to make the findings sought by Sabino. Neb. Rev. Stat. § 43-1238(b) (Cum. Supp. 2018) provides:

> In addition to having jurisdiction to make judicial determinations about the custody and care of the child, a court of this state with exclusive jurisdiction under subsection (a) of this section [setting forth when a court has jurisdiction to make an initial child custody determination] has jurisdiction and authority to make factual findings regarding (1) the abuse, abandonment, or neglect of the child, (2) the nonviability of reunification with at least one of the child's parents due to such abuse, abandonment, neglect, or a similar basis under state law, and (3) whether it would be in the best interests of such child to be removed from the United States to a foreign country, including the child's country of origin or last habitual residence. If there is sufficient evidence to support such factual findings, the court shall issue an order containing such findings when requested by one of the parties or upon the court's own motion.

---

[5] *Id.*

[6] *Id.*

Although the amendments to § 43-1238 were not effective until July 19, 2018, which was several months after the order was issued in this case, we recently held in *In re Guardianship of Carlos D.*[7] that the change made to § 43-1238(b) was procedural and thus applied to pending cases.

The language of § 43-1238 provides that if a court has jurisdiction to make an initial child custody determination, it also has the jurisdiction and authority to make the factual findings relevant to SIJ status. In this case, the record shows that the child's home state for purposes of § 43-1238(a) was Nebraska, and, as such, the court had the jurisdiction to make an initial child custody determination and to make the requested findings.

*Sufficient Evidence.*

Section 43-1238 provides that "[i]f there is sufficient evidence to support such factual findings, the court shall issue an order containing such findings when requested by one of the parties or upon the court's own motion."

[7,8] Having concluded that the court has the authority to make these findings, we turn to an examination of what these factfinding courts should consider when doing so. The role of state courts in the SIJ status determination is to make the findings of fact necessary to the U.S. Citizenship and Immigration Service's legal determination of the immigrant child's entitlement to SIJ status.[8] Federal law affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, and abandonment, as well as a child's best interests.[9] But it is not the role of the state court to make a determination as to whether

---

[7] *In re Guardianship of Carlos D., supra* note 2.

[8] 8 U.S.C. § 1101(a)(27)(J)(iii) (Reissue 2018).

[9] See, *Guardianship of Penate*, 477 Mass. 268, 76 N.E.3d 960 (2017); *H.S.P. v. J.K.*, 223 N.J. 196, 121 A.3d 849 (2015); *Kitoko v. Salomao*, 215 A.3d 698 (Vt. 2019); *In re Y.M.*, 207 Cal. App. 4th 892, 144 Cal. Rptr. 3d 54 (2012); *Simbaina v. Bunay*, 221 Md. App. 440, 109 A.3d 191 (2015).

a child will ultimately be eligible for SIJ status; that is a determination reserved for the U.S. Customs and Immigration Service and the federal government.[10]

[9,10] That a court is requested to make findings for purposes of SIJ status does not mean that it must make findings favorable to the party seeking them.[11] Courts asked to make these findings may conclude that there was insufficient evidence or that the evidence was not credible.[12]

Federal law provides:

Applications for asylum and other forms of relief from removal in which an unaccompanied alien child is the principal applicant shall be governed by regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases.[13]

Courts in other jurisdictions have interpreted this language as a caution to courts to not place insurmountable evidentiary burdens on SIJ petitioners, because those seeking that status will have limited abilities to corroborate testimony with additional evidence.[14]

In this case, the district court questioned both the record before it and its authority, before concluding that it was not "even within [its] purview" to make the findings sought by Sabino. We conclude that although the court can and should entertain a request for findings, the court's powers as a fact

---

[10] See, *J.U. v. J.C.P.C.*, 176 A.3d 136 (D.C. 2018); *Romero v. Perez*, 463 Md. 182, 205 A.3d 903 (2019); *Guardianship of Penate, supra* note 9; *Kitoko v. Salomao, supra* note 9.

[11] See, *J.U. v. J.C.P.C., supra* note 10; *Romero v. Perez, supra* note 10; *Kitoko v. Salomao, supra* note 9; *In re J.J.X.C.*, 318 Ga. App. 420, 734 S.E.2d 120 (2012).

[12] See *id.*

[13] 8 U.S.C. § 1232(d)(8) (2018).

[14] See, *J.U. v. J.C.P.C., supra* note 10; *Romero v. Perez, supra* note 10; *Kitoko v. Salomao, supra* note 9.

finder to assess the credibility of a witness or judge the sufficiency of evidence remain in effect. But nothing in this opinion should be read to suggest what findings the court should make on remand.

Because in this case the district court concluded that it lacked the authority to make the requested findings, we accordingly reverse the decision of the district court and remand the cause for further proceedings.

## CONCLUSION

The decision of the district court is reversed and the cause is remanded for further proceedings.

Reversed and remanded for
further proceedings.