IN THE NEBRASKA COURT OF APPEALS

MEMORANDUM OPINION AND JUDGMENT ON APPEAL
(Memorandum Web Opinion)

MEJIA RAMIREZ V. MERCADO BAUTISTA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

BLANCA REYNA MEJIA RAMIREZ, APPELLANT,

V.

LUCIO MERCADO BAUTISTA, APPELLEE.

Filed May 26, 2020.    No. A-19-908.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Reversed and remanded for further proceedings.

Anna D. Deal, of Immigrant Legal Center, an affiliate of the Justice For Our Neighbors Network, for appellant.

No appearance for appellee.

PIRTLE, BISHOP, and WELCH, Judges.

BISHOP, Judge.

The Douglas County District Court dissolved the marriage of Blanca Reyna Mejia Ramirez and Lucio Mercado Bautista and awarded full custody of the parties' daughter to Blanca. Blanca sought specific findings of fact for purposes of special immigrant juvenile (SIJ) status under federal law. The district court declined to make such findings, and Blanca appealed. We reverse, and remand the cause for further proceedings.

BACKGROUND

Blanca and Lucio were married in Mexico in 1992. They have three children, a son and two daughters. On July 12, 2018, Blanca filed a complaint for dissolution of marriage from Lucio, who resided in Mexico. She sought custody of the parties' two daughters, born in 2000 and 2009; the parties' son was no longer a minor affected by the divorce proceedings. In addition to seeking

- 1 -

custody of the children, Blanca sought an order finding the children's reunification with Lucio was not viable due to abuse, abandonment, and neglect, and that a return to Mexico was not in the children's best interests.

On December 14, 2018, Blanca filed an ex parte motion for temporary custody of the children. In support of the motion, both Blanca and her counsel filed affidavits. In her affidavit, counsel stated the children would like the opportunity to apply for SIJ status with the United States Citizenship and Immigration Service under federal law. According to counsel, as part of the SIJ status process, a state court is asked to provide findings pursuant to Neb. Rev. Stat. § 43-1238(b) (Cum. Supp. 2018) that reunification with the child's parent(s) is not viable due to the abuse, neglect, or abandonment the child has endured, and it would not be in the child's best interests to be returned to the home country; the state court order permits the child to file an application for SIJ status with the United States Citizenship and Immigration Service. Counsel also provided information on violence against women in Mexico. In her affidavit, Blanca provided information regarding the abuse that Lucio subjected the children to, and stated that the children were present when Lucio was violent and threatened her. Blanca stated that she fled to the United States in May 2016 after learning that Lucio planned to kill her. Blanca feared that if her daughters returned to Mexico they would "face extreme danger and possibly death at the hands of [Lucio] or other individuals who would seek to harm them," and in her experience "Mexican law enforcement is unwilling or unable to protect women and children from violence, particularly violence at the hands of family members."

On December 14, 2018, the district court filed its signed ex parte order awarding temporary custody to Blanca. The order prepared by Blanca's counsel also included findings that the children had been abused and neglected by Lucio, that due to the abuse and neglect the children's reunification with Lucio was not viable, and that return to Mexico, their country of nationality and last residence, was not in their best interests. However, the court struck through those findings and therefore did not make the findings requested by Blanca.

On December 20, 2018, a hearing was held on Blanca's ex parte motion. Blanca's counsel stated that she was hoping the district court would reconsider the language it struck if more testimony was given to "prove up" the statements. Blanca testified via an interpreter about the abuse and mistreatment that she and her children were subjected to by Lucio. Noting that Lucio had not yet been served with a summons in this case, the court stated it was willing to order temporary custody remain with Blanca, but it would not make further findings at this point. Counsel pointed out that the older daughter would "age out" in January 2019, and if the court did not make the requested findings then that child would not have an opportunity to apply for "an immigration benefit." In response, the district court filed its signed ex parte order for temporary custody prepared by Blanca's counsel that awarded temporary custody to Blanca "because the children were subjected to abuse and neglect by [Lucio]." However, the court again struck through findings that due to the abuse and neglect the children's reunification with Lucio was not viable, and that return to Mexico, their country of nationality and last residence, was not in their best interests.

Blanca ultimately moved for and was granted permission to serve Lucio by publication.

On June 14, 2019, the final divorce hearing was held. Lucio did not appear in person and was not represented by counsel. Blanca testified via an interpreter, and Blanca's affidavit was received into evidence. Collectively, the evidence revealed the following. Blanca married Lucio in Mexico in 1992. They have three children, only one of whom, their youngest daughter, was still a minor under Nebraska law. When Blanca and Lucio lived together, Lucio hit Blanca, abused her, and used "offensive words" towards her. Blanca "frequently had bruises, marks, and scars from severe beatings by [Lucio]." Lucio "aimed a loaded firearm at [Blanca] in the child's presence on several occasions, and once he fired the weapon at [Blanca]." The parties' youngest daughter was present when Lucio beat and threated Blanca. Lucio "would insult, hit, and kick the child." Blanca sought help from the police in Mexico "[m]any times," but "[t]hey never helped [her]." Blanca fled in May 2016 because she learned that Lucio planned to kill her. Blanca had not had any contact with Lucio since she fled from Mexico and she did not know where he was, although she had heard through acquaintances that Lucio had moved to a different city in Mexico. Lucio had not provided any support for the parties' daughter since May 2016. Blanca was afraid that Lucio would hurt their daughter if the daughter returned to Mexico because "he always hurt [their daughter]," and "he always said that he was going to kill [their daughter]." In Blanca's experience, "Mexican law enforcement is unwilling or unable to protect women and children from violence, particularly violence at the hands of family members." Blanca stated it would be in the child's best interests to award custody to her.

After Blanca's submission of evidence, the district court found that it had jurisdiction over the subject matter of the action, proof of service by publication was contained in the file, and Lucio made no appearance and was in default. The following colloquy was then had between the court and Blanca's counsel.

[THE COURT:] I'll enter the decree [prepared by counsel], but I'm going to strike from it Paragraph 17 that provides that the Court has determined that the child can't become reunified with the defendant or whatever it is. I don't see how that's something that I can do. So I'll enter the decree, but not with that provision.

[COUNSEL]: Why is that something you cannot do?

THE COURT: I don't know that I have jurisdiction to do it.

[COUNSEL]: You absolutely do have jurisdiction to do it.

THE COURT: Okay. Submit a brief, and I will consider it.

[COUNSEL]: Okay. I will. Thank you.

THE COURT: But at the moment, the Court's not inclined to make a finding that the minor child's reunification with the defendant is not viable. I don't know what reunification with the defendant means. I assume what it means --

[COUNSEL]: Being placed in his custody.

THE COURT: I assume the child wasn't born in the United States. So is [Blanca] a United States citizen?

[COUNSEL]: She's not. But it's not relevant to this action.

THE COURT: Okay. Then what's the relevance to this paragraph?

[COUNSEL]: Well, pursuant to 43-1238(b), you do have jurisdiction to make such findings. And, in fact, if there's sufficient evidence in the record to support the findings, you shall make the findings.

THE COURT: I'm not going to make a finding that the child's reunification with the defendant is not viable. It could very well be viable in the future.

[COUNSEL]: You just heard testimony though about extreme violence and abuse against the plaintiff and the children. How could it possibly be in the children's best interest to be returned to defendant's custody at any time?

THE COURT: It might sometime in the future be possible with therapy with counseling and the father and the child go to counseling and in five years everything is great. I'm not going to make a finding that --

[COUNSEL]: So are there any circumstances in which you would find that reunification is not viable on a permanent basis?

THE COURT: No. It's not relevant here. I have given her custody of the child. The parenting plan with which I have done that provides that the child's contact with the father is at her discretion. And until he comes into court and challenges that and asks me to change that, those are the circumstances that would exist under the decree, and that's all I need. The citizenship of these people is none of my concern. The best interest of the children is. I have given her custody of the child.

[COUNSEL]: This proceeding is not about the citizenship of either of the parties or the children.

THE COURT: Correct.

[COUNSEL]: It has virtually nothing to do with the immigration process.

THE COURT: She has established jurisdiction with this Court by testifying that she's a resident of the State of Nebraska and was for at least a year before she filed her complaint. That gives me jurisdiction to dissolve the marriage. I will agree to do that. I will agree to incorporate in that decree a parenting plan that she's asked me to incorporate. And that is that she have sole custody of the child, and any contact that the child have with the defendant be at the plaintiff's discretion.

. . . .

[COUNSEL]: I really believe that there's a strong statutory basis for you to make these findings. Are you familiar with 43-1238(b)?

THE COURT: Yes, I just read it.

[COUNSEL]: Okay. So it provides that you have jurisdiction to make a finding with respect to reunification being nonviable. And that you shall make such finding if there's sufficient evidence in the record.

THE COURT: I disagree.

[COUNSEL]: You disagree with the statute?

THE COURT: I'm not going to make the finding that reunification between the father and the child can never happen, is not viable, will not ever happen.

. . . .

- 4 -

THE COURT: . . . . If you want me to enter the decree without that finding, I will be happy to do so. If not, we're adjourned. You're excused.

[COUNSEL]: That would be great if you would strike whatever language you feel you need to strike from Paragraph 17, unless you think you might change your mind with briefing.

THE COURT: I don't think so. You're asking me to find that it's impossible that these two could ever be --

[COUNSEL]: I'm not asking you to find that it's impossible that they could ever be reunified. I'm asking you to find that reunification is not viable at this time.

THE COURT: I won't do that.

The district court subsequently signed a decree prepared by Blanca's counsel that awarded custody of the child to Blanca and included a finding that Lucio had abused and neglected the child, was verbally and physically abusive toward the child, and routinely beat and threatened Blanca in the child's presence, including with a loaded firearm. However, the court struck paragraph 17 in the prepared decree which stated:

The court finds, pursuant to Neb. Rev. Stat. § 43-1238(b), that due to the Defendant's abuse and neglect, the minor child's reunification with Defendant is not viable. The court further finds that it is in the minor child's best interest to remain in the custody and control of the Plaintiff, who resides in the United States, and not return to Mexico. The court makes these factual findings and conclusion of law pursuant to Neb. Rev. Stat. §§ 43-1238(b) and 43-2923, and for the purpose of furthering the minor's efforts to obtain relief from Defendant's abuse and neglect.

Because the court struck through paragraph 17, it did not make the findings as requested by Blanca. Blanca's motion to alter or amend was denied.

Blanca appeals.

### ASSIGNMENTS OF ERROR

Blanca assigns four errors that can be consolidated as one: The district court erred in not making the findings of fact requested by Blanca. No responsive brief was filed by Lucio.

### STANDARD OF REVIEW

Statutory interpretation presents a question of law. *Sabino v. Ozuna*, 305 Neb. 176, 939 N.W.2d 757 (2020). We independently review questions of law decided by a lower court. *Id*.

In a marital dissolution action, an appellate court reviews the case de novo on the record to determine whether there has been an abuse of discretion by the trial judge. *Id*.

### ANALYSIS

Like in *Sabino v. Ozuna, supra*, this appeal generally presents the question of whether the district court had the authority to make the findings of fact requested by Blanca and, if so, whether there was sufficient evidence for the court to make those findings. The opinion in *Sabino v. Ozuna,*

*supra*, was released after Blanca filed her notice of appeal and appellate brief in this case; thus, neither the district court nor Blanca had the benefit of the Nebraska Supreme Court's opinion which addressed the same issue raised in this appeal.

DISTRICT COURT'S AUTHORITY

In *Sabino v. Ozuna, supra*, the Nebraska Supreme Court held that the district court had the authority to make the findings sought by the plaintiff--i.e., abuse, neglect, or abandonment; family reunification; and best interests of the child. Section 43-1238(b) provides:

In addition to having jurisdiction to make judicial determinations about the custody and care of the child, a court of this state with exclusive jurisdiction under subsection (a) of this section has jurisdiction and authority to make factual findings regarding (1) the abuse, abandonment, or neglect of the child, (2) the nonviability of reunification with at least one of the child's parents due to such abuse, abandonment, neglect, or a similar basis under state law, and (3) whether it would be in the best interests of such child to be removed from the United States to a foreign country, including the child's country of origin or last habitual residence. If there is sufficient evidence to support such factual findings, the court shall issue an order containing such findings when requested by one of the parties or upon the court's own motion.

The Nebraska Supreme Court stated:

The language of § 43-1238 provides that if a court has jurisdiction to make an initial child custody determination, it also has the jurisdiction and authority to make the factual findings relevant to SIJ status. In this case, the record shows that the child's home state for purposes of § 43-1238(a) was Nebraska, and, as such, the court had the jurisdiction to make an initial child custody determination and to make the requested findings.

*Sabino v. Ozuna*, 305 Neb. at 182, 939 N.W.2d at 762.

Nebraska is the home state of Blanca's child for purposes of § 43-1238(a). See Neb. Rev. Stat. § 43-1227(7) (Reissue 2016) (home state means state in which child lived with parent for at least 6 consecutive months immediately before commencement of child custody proceeding). Therefore, like in *Sabino v. Ozuna, supra*, the district court had the jurisdiction to make an initial child custody determination and to make Blanca's requested findings.

SUFFICIENT EVIDENCE

Section 43-1238(b) provides that "[i]f there is sufficient evidence to support such factual findings, the court shall issue an order containing the findings when requested by one of the parties or upon the court's own motion." Because we have already determined that the district court had the authority to make the requested findings, the next question is whether there was sufficient evidence to support the findings.

The Nebraska Supreme Court stated:

The role of state courts in the SIJ status determination is to make the findings of fact necessary to the U.S. Citizenship and Immigration Service's legal determination of the

immigrant child's entitlement to SIJ status. Federal law affirms the institutional competence of state courts as the appropriate forum for child welfare determinations regarding abuse, neglect, and abandonment, as well as a child's best interests. But it is not the role of the state court to make a determination as to whether a child will ultimately be eligible for SIJ status; that is a determination reserved for the U.S. Customs and Immigration Service and the federal government.

That a court is requested to make findings for purposes of SIJ status does not mean that it must make findings favorable to the party seeking them. Courts asked to make these findings may conclude that there was insufficient evidence or that the evidence was not credible.

Federal law provides: "Applications for asylum and other forms of relief from removal in which an unaccompanied alien child is the principal applicant shall be governed by regulations which take into account the specialized needs of unaccompanied alien children and which address both procedural and substantive aspects of handling unaccompanied alien children's cases."

Courts in other jurisdictions have interpreted this language as a caution to courts to not place insurmountable evidentiary burdens on SIJ petitioners, because those seeking that status will have limited abilities to corroborate testimony with additional evidence.

*Sabino v. Ozuna*, 305 Neb. at 182-83, 939 N.W.2d at 762.

In its decree, the district court did find that Lucio had abused and neglected the child. However, it struck language regarding the viability of reunification and whether it would be in the child's best interests to be removed from the United States. Blanca argues, "[T]he trial court seemed to take issue with the propriety of or need for such findings, but *not* with the sufficiency of the supporting evidence presented." Brief for appellant at 16 (emphasis in original.) We agree with Blanca that the trial court seemed to take issue with the need for such findings, as evidenced by the court's statement that the viability of reunification was "not relevant here" because it gave Blanca custody.

Like the Nebraska Supreme Court in *Sabino v. Ozuna, supra*, we conclude that although the court can and should entertain a request for findings, the court's powers as a fact finder to assess the credibility of a witness or judge the sufficiency of evidence remain in effect. Accordingly, we reverse the decision of the district court and remand the cause for further proceedings so that the district court can entertain Blanca's request for findings in light of the Nebraska Supreme Court's recent opinion in *Sabino v. Ozuna, supra*.

CONCLUSION

The decision of the district court is reversed, and the cause is remanded for further proceedings.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.